Donald Foster MULLINS, Plaintiff,

v.

M.G.D. GRAPHICS SYSTEMS GROUP, Rockwell International, Heidelberg Eastern, Inc., The Colour Group, Gold Coast Graphics, Inc., H. Wohlenberg KG, AM International, Inc., and A.M. Wohlenberg GmbH, Defendants.

Civ. A. No. 1:93–cv–1954–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 15, 1994.

Jason T. Schneider, Atlanta, GA, Arthur Alan Wolk and Catherine B. Slavin, Philadelphia, PA, for plaintiff.

Michael W. McElroy, James Dartlin Meadows, William J. Holley, II, W. Seaborn Jones, Eve Anne Appelbaum, Atlanta, GA, for defendants.

## ORDER

HULL, District Judge.

This action is before the Court on Defendant Heidelberg's Motion for Judgment on the Pleadings [14–1], and Defendant AM International's Motion for Protective Order [27–1].[1]

### I. *Defendant Heidelberg's Motion for Judgment on the Pleadings*

■ Defendant Heidelberg brings this Motion seeking judgment on the pleadings as to Count One (strict liability) and Count Three (breach of warranty) of Plaintiff's Complaint. In considering Defendant Heidelberg's Motion, the Court must presume, for purposes of this motion, that all well-pleaded factual allegations of the Complaint are true and all contravening assertions in the movant's pleadings are false. *See National Metropolitan Bank v. U.S.*, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945); *Beal v. Missouri Pac. R.R.*, 312 U.S. 45, 51, 61

S.Ct. 418, 421, 85 L.Ed. 577 (1941); *Cannon v. Clark*, 6 A.D.D. 339, 1994 U.S.Dist. LEXIS 9770, *2 (S.D.Fla.1994); *Mathis v. Velsicol Chemical Corp.*, 786 F.Supp. 971, 973 (N.D.Ga.1991). The Court must grant a Motion for judgment on the pleadings where no material issue of fact exists, and when the movant demonstrates it is entitled to judgment as a matter of law. Fed.R.Civ.P. 12(c); *see also Atlanta Pulmonary Diagnostic Clinic v. Haynes*, No. 93–1466, 1994 WL 258260, *2–3, 1994 U.S.Dist. LEXIS 2743, *6 (N.D.Ga. Jan. 21, 1994).

This action arises from injuries sustained by Plaintiff Mullins, while employed by Action Bindery, a corporation in Norcross, Georgia. Plaintiff was operating a Wohlenberg High–Speed Guillotine Model 150, Serial Number 11221 (the "Guillotine") papercutter, when the machine allegedly descended on Plaintiff's hand and cut off several of his fingers. Plaintiff alleges that the injuries caused by the machine were a result of faulty safety devices on the Guillotine.

Plaintiff sued several entities which had been in possession of this particular Guillotine since its manufacture. Plaintiff's action is founded on theories of recovery under strict liability, negligence, breach of warranty, and the wilful, wanton and reckless conduct of Defendants.

Defendant Heidelberg has filed a Motion for Judgment on the Pleadings as to Count One and Three of Plaintiff's Complaint [14–1]. Count One alleges that Defendant Heidelberg is strictly liable in tort for Plaintiff's injuries, and Count Three alleges that Defendant Heidelberg breached its warranties of fitness and merchantability. Defendant Heidelberg contends that Plaintiff has not asserted factual allegations that, even if proven, would permit Plaintiff recovery under Georgia law.

Plaintiff Mullins responds (1) that New York, not Georgia, law applies to this case, and (2) that even if Georgia law does apply,

---

1. Also pending before the Court are Defendant Heidelberg's Motion to Compel Discovery Responses [31–1], Motion for Protective Order [35–1], and Motion for Award of Expenses [35–2]. Plaintiff has filed a Motion for Extension of Dis-

covery [32–1]. These motions will be handled at a discovery and status conference with the Court, on **Wednesday, September 21, 1994 at 10 a.m.** Counsel for all parties shall attend.

Georgia law supports Plaintiff's claims against Defendant Heidelberg. First, the Court will address the choice of law question presented by Defendant Heidelberg's Motion.

### A. *Substantive Law of Georgia Applicable to Plaintiff's Claims Against Defendant Heidelberg*

When considering a choice of law question, a federal court sitting in diversity is to apply the choice of law rules of the forum state, here Georgia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Wammock v. Celotex Corp.*, 835 F.2d 818, 829 (11th Cir.1988); *Harris v. City of Chattanooga*, 507 F.Supp. 374, 376 (N.D.Ga.1981). Under Georgia's choice of law rules, the substantive law to be applied in a tort case is governed by the doctrine of *lex loci delicti*, the law of the place of the wrong. *Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.*, 172 Ga. App. 902, 903, 324 S.E.2d 738 (1984).

In this case, Plaintiff was injured while at work in Norcross, Georgia. Defendant Heidelberg contends that, under Georgia law, the place of the wrong is where the injury was sustained and not where the last act causing the injury occurred. Numerous cases indicate that under Georgia law, the place of the wrong is where the injury is sustained, and not where the last tortious act causing the injury occurred. *See Best Canvas Prod. & Supplies v. Ploof Truck Lines*, 713 F.2d 618, 621 (11th Cir.1983) ("Georgia follows the traditional rule that in tort actions, the law of the place of the injury- or *lex loci delicti*- governs the resolution of the substantive issues"); *Whitaker v. Harvell–Kilgore Corp.*, 418 F.2d 1010, 1017 (5th Cir. 1969) ("[i]t is quite lucid that the Georgia conflicts of law rule is that the law of the place of injury governs in tort liability"); *Orr v. Sasseman*, 239 F.2d 182, 186 (5th Cir. 1956); *Cash v. Armco Steel Corp.*, 462 F.Supp. 272, 274 (N.D.Ga.1978) (under Georgia choice of law rules, "the place of the

wrong is the place where the injury was sustained"); *Brooks v. Eastern Air Line, Inc.*, 253 F.Supp. 119, 121 (N.D.Ga.1966) (under Georgia choice of law rules, "the place of the wrong is the place where the injury was sustained"); *see also Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.*, 172 Ga. App. 902, 903, 324 S.E.2d 738 (1984) (applying the substantive law of the place of the injury); *Wardell v. Richmond Screw Anchor Co.*, 133 Ga.app. 378, 210 S.E.2d 854 (1974) (where court applied substantive law of place injury occurred); *Ohio Southern Express Co. v. Beeler*, 110 Ga.App. 867, 868, 140 S.E.2d 235 (1965) (where court applied substantive law of place of injury).

Plaintiff Mullins argues that the doctrine of *lex loci delicti* is not rigidly applied by the Georgia courts, and does not encompass just the final injury, but should include a consideration of the actual tortious activity which preceded the injury. Therefore, argues Plaintiff, under Georgia's choice of law rules, the substantive law of New York should govern this case.

To support his contention, Plaintiff relies heavily on four cases: *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines*, 713 F.2d 618 (11th Cir.1983), *Baltimore Football Club, Inc. v. Lockheed Corp.*, 525 F.Supp. 1206 (N.D.Ga.1981), *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524 (7th Cir. 1981), and *Karimi v. Crowley*, 172 Ga.App. 761, 324 S.E.2d 583 (1984). In both *Baltimore Football Club* and *Pittway*,[2] the structural cracks in the airplane were discovered in one state, but the court was unable to determine where the cracks actually had occurred. *See Pittway*, 641 F.2d at 527 ("the location of the aircraft at the time the crack occurred is indeterminate"); *Baltimore Football Club*, 525 F.Supp. at 1208 ("[t]he actual situs of the place of injury- i.e., the exact location of the airplane when the cracks occurred- is basically impossible to determine"). Because the place of the injury was indeterminable in these cases, the courts did not apply strictly Georgia's *lex loci delicti*

---

**2.** Furthermore, in *Pittway*, the federal trial court sat in Illinois, and applied Illinois law, which used the most significant relationship test for choice of law questions. According to the *Pittway* court, the most significant relationship test

presumes that the law of the place of injury applies, unless "another state has a 'more significant relationship' to the occurrence or parties involved." *Pittway*, 641 F.2d 524, 526 (7th Cir. 1981).

doctrine. Nonetheless, in both *Pittway* and *Baltimore Football Club*, the courts acknowledged Georgia's general well established rule that the law of the place of the injury governs rather than the law of the place of the tortious acts allegedly causing the injury. However, since the place of the injury was indeterminable, the courts were unable to apply rigidly the *lex loci delicti* doctrine.

In *Best Canvas Products*, the plaintiff, Best Canvas Products & Supplies Inc. ("Besco"), sued defendant Ploof Truck Lines ("Ploof") for the balance of a shipment of tarpaulins Besco had sold to Ploof. Ploof counterclaimed alleging that the tarpaulins had not been waterproofed and as a result several shipments of wood transported by Ploof across the Southeast had been damaged. In reviewing the case, the Eleventh Circuit stated that "Georgia follows the traditional rule that in tort actions, the law of the place of the injury—or *lex loci delicti*—governs the resolution of the substantive issues." *Best Canvas Products*, 713 F.2d at 621 (citations omitted). In examining the facts, the Eleventh Circuit found that it was almost impossible to ascertain the place of injury because the water damage occurred during several interstate shipments over the course of six months. Since, the place of the injury was "indeterminate," the Eleventh Circuit did not strictly apply Georgia's *lex loci delicti* doctrine, but instead applied the law of the place of manufacture, which happened to be Georgia. *Id.* at 622.

In *Best Canvas Products*, *Pittway*, and *Baltimore Football Club*, the courts found the place of the injury to be indeterminate and therefore did not strictly apply Georgia's *lex loci delicti* doctrine. Unlike the above cases, the facts in this case do not present a scenario where the situs of the injury is impossible, or even difficult, to determine. Rather, Plaintiff's injury occurred here in Georgia. *See* Complaint [1–1], at ¶ 21. Under the doctrine of *lex loci delicti*, the law of the place of the wrong governs the liability of the tort-feasor, and the location of the last event necessary to make the tort-feasor liable is the place of the wrong. *See Brooks v. Eastern Air Lines, Inc.*, 253 F.Supp. 119, 121 (N.D.Ga.1966) (Under Georgia law, "the place of the wrong is the place where the injury was sustained rather than where the acts were committed").

Plaintiff also directs the Court to *Karimi v. Crowley*, 172 Ga.App. 761, 324 S.E.2d 583 (1984), a Georgia Court of Appeals decision where the injury occurred in Alabama, yet the Georgia court did not follow the doctrine of *lex loci delicti*, but instead applied the law of the forum—Georgia law. In *Karimi*, the plaintiff was a Georgia resident who was injured while working on a project in Alabama.[3] Plaintiff filed and received recovery under Georgia's workers' compensation statute and then sought additional recovery in tort. The Georgia Court of Appeals specifically recognized that the general rule in Georgia for tort recovery was *lex loci delicti*. *Id.* at 762, 324 S.E.2d 583. However, the Georgia court found that application of Alabama law would be contrary to the exclusivity provision of the Georgia workers' compensation statute, and thus contrary to Georgia's public policy of ensuring recovery for injured workers, while limiting the liability of employers. *Id.* at 762, 324 S.E.2d 583.[4]

■ The *Karimi* opinion demonstrates the proposition that, when considering whether to apply another state's laws, the forum state will apply its *own* laws where the application of another state's law would be contrary to

---

3. The Georgia court noted that the general contractor for the project was a Georgia corporation, that plaintiff's supervisor was a Georgia resident, and that plaintiff's immediate employer, a subcontractor on the project, was a Georgia corporation. *Karimi*, 172 Ga.App. at 761–62, 324 S.E.2d 583.

4. The Georgia court also stated that "the laws of other states have no force in Georgia except on principles of comity and so long as their enforcement is not contrary to the policy of this State." *Karimi*, 172 Ga.App. at 762, 324 S.E.2d 583.

That statement is in following with the generally accepted view that the forum state does not have to apply the laws of another state, where the result would be contrary to the public policy of the forum state. *See Nevada v. Hall*, 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L.Ed.2d 416 (1979); *Pacific Insurance Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); *see generally*, EUGENE F. SCOLES & PETER HAY, CONFLICT OF LAWS § 17.46 (1984).

the public policy of the forum state. In this case, application of *lex loci delicti* dictates that the substantive law of Georgia, and not some other state's laws, govern Plaintiff's tort action. Additionally, the public policy behind the Georgia workers' compensation statute is not currently before the Court.

After closely examining each of the above four cases, the Court finds that the cases, if anything, support Defendant Heidelberg's position that Georgia law directs that the place of the injury governs here and not the law of the place where acts which allegedly caused the injury took place. *Best Canvas Prod. & Supplies v. Ploof Truck Lines,* 713 F.2d 618, 621 (11th Cir.1983) ("Georgia follows the traditional rule that in tort actions, the law of the place of the injury- or *lex loci delicti-* governs the resolution of the substantive issues"); *Whitaker v. Harvell–Kilgore Corp.,* 418 F.2d 1010, 1017 (5th Cir.1969) ("[i]t is quite lucid that the Georgia conflicts of law rule is that the law of the place of injury governs in tort liability"); *Orr v. Sasseman,* 239 F.2d 182, 186 (5th Cir.1956); *Cash v. Armco Steel Corp.,* 462 F.Supp. 272, 274 (N.D.Ga.1978) (applying Georgia choice of law rules); *Brooks v. Eastern Air Line, Inc.,* 253 F.Supp. 119, 121 (N.D.Ga.1966) (applying Georgia choice of law rules); *see also Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.,* 172 Ga.App. 902, 903, 324 S.E.2d 738 (1984); *Wardell v. Richmond Screw Anchor Co.,* 133 Ga.App. 378, 210 S.E.2d 854 (1974) (where court applied substantive law of place injury occurred); *Ohio Southern Express Co. v. Beeler,* 110 Ga.App. 867, 868, 140 S.E.2d 235 (1965) (where court applied substantive law of place of injury).

As is true in all tort cases, unless the Plaintiff suffers injury the Defendant cannot be liable. *See Best Canvas Products,* 713 F.2d at 621. Here, Plaintiff's injury was sustained in Georgia. Therefore, applying Georgia's choice of law rules, the Court finds that the substantive law of Georgia governs the resolution of Defendant Heidelberg's Motion for Judgment on the Pleadings.

B. *Whether Defendant Heidelberg Can Be Sued Based Upon Strict Liability*

■ Count One of Plaintiff's Complaint seeks recovery from Defendant Heidelberg based upon a theory of strict liability. In Georgia, recovery under strict liability is governed by O.C.G.A. § 51–1–11(b), which holds strictly liable a manufacturer who sells personal property, which is new, to an individual who is injured by that personal property, as follows:

(b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51–1–11(b).

Defendant Heidelberg contends that it does not fall within the purview of O.C.G.A. § 51–1–11(b), and thus Count One of Plaintiff's Complaint fails to assert factual allegations upon which Defendant Heidelberg may be held liable. Specifically, Defendant Heidelberg contends that it is not a manufacturer under O.C.G.A. § 51–1–11(b).

These are the three basic scenarios where an entity is deemed to be a manufacturer under O.C.G.A. § 51–1–11(b):

(1) where the entity is an actual manufacturer or designer of the product; or

(2) where the entity is a manufacturer of a component part which failed and caused the plaintiff injury; or

(3) where the entity is an assembler of component parts who then sells the item as a single product under its own trade name.

*See Morgan v. Mar–Bel, Inc.,* 614 F.Supp. 438, 440 (N.D.Ga.1985); *Williams v. City Ice Co.,* 190 Ga.App. 744, 745, 380 S.E.2d 341 (1989) ("a strict liability claim lies only against the manufacturer and not against the mere owner of a product").

In this case, Plaintiff's Complaint alleges (1) that "[l]ong prior to June, 1983, Defendant Wohlenberg manufactured" the Guillotine (Complaint at ¶ 12), (2) that "defendant Miehle and/or defendant M.D.G. [sic] modi-

fied the Guillotine" (Complaint at ¶ 17), and (3) that "the decision to modify the Guillotine was made by defendants Colour and/or Gold Coast, in consort with and implemented and/or known by defendants MGD and Miehle, acting at all times, either for themselves or in behalf of Rockwell and Wohlenberg" (Complaint at ¶ 18). Plaintiff's allegations against Defendant Heidelberg are that "defendants Colour and/or Gold Coast traded in the Guillotine to defendant Heidelberg, which in turn resold the modified, unsafe and dangerous papercutter to plaintiff's employer, Action Bindery." (Complaint at ¶ 20).

Even in the light most favorable to Plaintiff, Defendant Heidelberg could be, at most, only a product seller. "A mere 'product seller' is not a manufacturer, and is not liable as a manufacturer on grounds of strict liability." See O.C.G.A. § 51-1-11.1; see also Alltrade, Inc. v. McDonald, 213 Ga.App. 758, 760, 445 S.E.2d 856 (1994); Ream Tool Co. v. Newton, 209 Ga.App. 226, 227, 433 S.E.2d 67 (1993). Based upon the pleadings, the Court finds that Plaintiff has not alleged that Defendant Heidelberg was a manufacturer of the Guillotine under O.C.G.A. § 51-1-11, and has not alleged any facts under which Defendant Heidelberg could be deemed a manufacturer of the Guillotine. Therefore, Defendant Heidelberg cannot be strictly liable for Plaintiff's injuries caused by the Guillotine.

■ Alternatively, the Court finds that Plaintiff has not alleged that the Guillotine was "personal property sold as new property" by Defendant Heidelberg. See O.C.G.A. § 51-1-11. Instead, Plaintiff's Complaint itself contends that the Guillotine was manufactured "[l]ong prior to June, 1983." (See Complaint [1–1], at ¶ 12). Plaintiff further avers that the Guillotine was in the "service of Defendant Colour," (Complaint [1–1], at

¶ 16), and was traded to Defendant Heidelberg in June, 1983. (Complaint [1–1], at ¶ 20). Defendant Heidelberg then traded the Guillotine to Plaintiff's employer, Action Bindery. Plaintiff's Complaint alleges that on September 18, 1991, the Guillotine injured Plaintiff. According to the Complaint, Plaintiff's injury occurred after Defendant Heidelberg received the Guillotine from Defendants Colour and/or Gold Coast and an untold number of years after the Guillotine was manufactured by Defendant Wohlenberg. Plaintiff's Complaint, if anything, alleges the Guillotine was not new when Defendant Heidelberg sold it.

Under Georgia law, "new" has been defined as something which has been "neither damaged nor used to any significant extent." See Horne v. Claude Ray Ford Sales, Inc., 162 Ga.App. 329, 329, 290 S.E.2d 497 (1982) (where the court defined a "new" car). Thus, according to Plaintiff's own Complaint, the Guillotine was manufactured long before 1983, was used by several entities and thus, was no longer new such that, under O.C.G.A. § 51-1-11, it could be "sold as new property," by Defendant Heidelberg to Plaintiff's employer.

Apparently recognizing the Guillotine was not new when sold by Defendant Heidelberg, Plaintiff's Response to the Motion for Judgment on the Pleadings appears to contend that the Complaint alleges that Defendant Heidelberg made some modifications to the Guillotine, thus making the Guillotine "new" for purposes of O.C.G.A. § 51-1-11. However, Plaintiff's Complaint refers to modifications by other Defendants, but does not allege any modifications by Defendant Heidelberg.[5]

Based upon the above analysis, the Court **GRANTS** Defendant Heidelberg's Motion for

---

**5.** Plaintiff alleges that whether the Guillotine was "new" as contemplated by O.C.G.A. § 51-1-11 remains at issue. Plaintiff contends that evidence may develop which shows that modifications made to the Guillotine rendered it new, and thus, Defendant Heidelberg would be liable under O.C.G.A. § 51-1-11. However, nothing in the pleadings alleges such a result. In fact, the Complaint specifically alleges that the Guillotine was modified "by Defendants Colour and/or Gold Coast, in consort with and implemented and/or known by Defendants M.G.D. and Miehle, acting

at all times, either for themselves or in behalf of Rockwell and Wohlenberg". (Complaint [1–1], at ¶ 18). There is no allegation that Defendant Heidelberg was involved in the decision to modify, or that Defendant Heidelberg did any modifications. Instead, the Complaint alleges that the modifications were made before Defendant Heidelberg purchased the Guillotine, Defendant Heidelberg then sold the modified Guillotine to Action Bindery (Complaint [1–1], at ¶ 20). In addition, Plaintiff cites no authority for interpreting O.C.G.A. § 51-1-11 in such a manner.

Judgment on the Pleadings [14–1] pursuant to Federal Rule of Civil Procedure 12(c), and **DISMISSES** Count One of Plaintiff's Complaint against Defendant Heidelberg.

### C. *Whether Defendant Heidelberg Is Liable Based Upon Breach of an Implied Warranty*

■ Defendant Heidelberg also seeks dismissal of Count Three of Plaintiff's Complaint. Plaintiff alleges that Defendant Heidelberg is liable based upon the breach of certain implied warranties covering the Guillotine. As discussed above, the Court will apply the substantive law of Georgia in ruling upon Defendant Heidelberg's Motion.

Under Georgia law, Plaintiff cannot recover from Defendant Heidelberg unless Plaintiff can demonstrate privity of contract. *See Morgan v. Mar–Bel, Inc.,* 614 F.Supp. 438, 441 (N.D.Ga.1985); *Beam v. Omark Indus., Inc.,* 143 Ga.App. 142, 237 S.E.2d 607 (1977); *Weaver v. Ralston Motor Hotel, Inc.,* 135 Ga.App. 536, 539, 218 S.E.2d 260 (1975). In *Morgan,* the plaintiff was an employee of the purchaser. The court found that, as an employee, the plaintiff did not have the requisite privity with the defendant, and therefore could not maintain an action, based upon breach of an implied warranty, against the defendant. Similarly, in this case, Plaintiff is an employee of the purchaser, Action Bindery. Defendant Heidelberg sold the Guillotine to Action Bindery, and Plaintiff was not a party to that sale.[6] Plaintiff lacks privity with Defendant Heidelberg, and thus, fails to establish one of the elements necessary to maintain an action founded upon the breach of an implied warranty under Georgia law.

Plaintiff's Response to the Motion for Judgment on the Pleadings [19–1] expressly states that Plaintiff "does not dispute [Defendant Heidelberg's] discussion of the case law on the law of privity." (Plaintiff's Response to Defendant Heidelberg's Motion for Judgment on the Pleadings [19–1], at 12–13). Instead, Plaintiff argues that resolution of these issues should be delayed until after discovery. However, under Federal Rule of Civil Procedure 12(c), a motion for judgment on the pleadings is proper "[a]fter the pleadings are closed." Fed.R.Civ.P. 12(c). Defendant Heidelberg is entitled to judgment on the pleadings where no material issue of fact exists and is entitled to judgment as a matter of law. *See Atlanta Pulmonary Diagnostic Clinic v. Haynes,* No. 93–1466, 1994 WL 258260, at *2–3, 1994 U.S.Dist. LEXIS 2743, *6 (N.D.Ga. Jan. 21, 1994).

Based upon the above, the Court finds that Plaintiff cannot maintain an action against Defendant Heidelberg for breach of an implied warranty because Plaintiff lacks privity with Defendant Heidelberg. Therefore, the Court **GRANTS** Defendant Heidelberg's Motion for Judgment on the Pleadings [14–1] and **DISMISSES** Count Three of Plaintiff's Complaint against Defendant Heidelberg.

### II. *Defendant AM International's Motion for Protective Order*

■ Defendant AM International filed a Motion for a Protective Order [27–1], claiming that it could not be sued, and thus should not have to participate in discovery, due to Defendant AM International's involvement in a bankruptcy action being adjudicated in Delaware. On June 8, 1994, the United States Bankruptcy Court for the District of Delaware issued an order stating that Plaintiff's action against AM International could proceed with AM International as "a nominal party for the purpose of establishing [AM International's] liability. . . ." *In re AM International, Inc.,* No. 93–582 (Bankr.D.Del. June 8, 1994) (order authorizing Plaintiff's action to proceed against AM International).

It appearing that AM International's Motion for Protective Order [27–1] is now moot, the Court **DENIES as MOOT** Defendant AM International's Motion for Protective Order.

---

**6.** In his response to Defendant Heidelberg's Motion for Judgment on the Pleadings, Plaintiff argues that the choice of law clause in the contract for sale between Defendant Heidelberg, as seller, and Action Bindery, as purchaser, should have some relevance. However, nothing in Plaintiff's pleadings alleges that Plaintiff was a party to that contract. Under the facts of this case, any choice of law provision in a contract between Defendant Heidelberg and Action Bindery is not determinative of the substantive law applicable to Plaintiff's action. *See Page v. Gulf Oil Co.,* 812 F.2d 249, 250 (5th Cir.1987).

### III. *Conclusion*

Taking all factual assertions in Plaintiff's pleadings as true, and any contravening assertions of Defendant Heidelberg as false, the Court finds (1) that Georgia law would apply to Count One and Count Three of Plaintiff's Complaint against Defendant Heidelberg, (2) that Plaintiff's Complaint does not allege that Defendant Heidelberg is a manufacturer under O.C.G.A. § 51–1–11, or that Defendant Heidelberg sold the Guillotine to Action Bindery as "new property," and (3) that Plaintiff's Complaint does not allege any privity between Plaintiff and Defendant Heidelberg, the seller of the Guillotine. If anything, Plaintiff's Complaint alleges that Defendant Heidelberg is a seller of used property to Action Bindery. Therefore, the Court **GRANTS** Defendant Heidelberg's Motion for Judgment on the Pleadings [14–1]

and **DISMISSES** Count One and Three of Plaintiff's Complaint against Defendant Heidelberg.[7]

The Court **DENIES as MOOT** Defendant AM International's Motion for Protective Order [27–1].

The Court **ORDERS** that counsel for all parties, unless excused by notification to the Court, appear for a discovery conference on **Wednesday September 21, 1994.**

SO ORDERED.

---

**7.** Defendant Heidelberg remains a defendant in Counts Two and Four of Plaintiff's Complaint.